**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Northern Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No.______________** |
| | * | |
| **$10,635.23 in U.S. Currency,** | * | |
| **Defendant.** | * | |

**...oooOooo...**

## VERIFIED COMPLAINT FOR FORFEITURE

The United States of America, through undersigned counsel, seeking forfeiture of $10,635.23 in U.S. Currency, hereinafter also referred to as "defendant property," respectfully presents to the Court the following:

1. This Court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. §§1345 and 1355, and 18 U.S.C. § 981(a)(1)(A) and (C).

2. Venue is proper in this Court pursuant to 28 U.S.C. §1395.

3. On or about July 16, 2012, the defendant currency was seized from the following NBRS Financial Bank business checking accounts:

a) Account #XXXXXX2823 in the name of Riddhi Siddhi, LLC or Inc. d/b/a Park Liquors in the amount of $3,264.71,

b) Account # XXXXXX0561 in the name of Bizzy B, Inc. d/b/a Crown Liquors in the amount of $3,025.30, and

c) Account # XXXXXX0865 in the name of Bizzy B, Inc. d/b/a Crown Liquors in the amount of $4,345.22 pursuant to a the execution of a seizure warrant, in the State and District of Maryland.

4. Once seized, the defendant property was placed in the custody of the Department

of the Treasury, Internal Revenue Service, in the District of Maryland, where it remains.

5.      The defendant property constitutes the proceeds of "specified unlawful activity"

and was involved in wire fraud in violation of 18 U.S.C. § 1343 and money laundering

transactions in violation of 18 U.S.C. § 1957 and is subject to seizure and forfeiture pursuant to

18 U.S.C. § 981.

6.      Such forfeiture is based upon, but not limited to, the evidence outlined in the

attached Application and Affidavit of Search and Seizure Warrant of Special Agent, M. Lisa

Ward, Homeland Security Investigations.

**WHEREFORE**, the plaintiff prays as follows:

1.      That any persons having an interest in the above-described defendant property be

cited to appear herein and answer the Complaint;

2.      That a Warrant in rem issue to the Department of Treasury, Internal Revenue

Service, commanding them to arrest the defendant property;

3.      That Judgment of Forfeiture be decreed against the defendant property;

4.      That upon Final Decree of Forfeiture, the Internal Revenue Service should dispose

of the defendant property and any cost bond according to law; and

5.      That the plaintiff has such other and further relief as the case may require.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

June 24, 2014

Richard C. Kay
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

**VERIFICATION**

I, Richard C. Kay, declare under penalty of perjury as provided by 28 U.S.C. §1746, that the foregoing Complaint for Forfeiture in rem is based on reports and information furnished to me by Homeland Security Investigations and the Department of the Treasury, Internal Revenue Service, and that everything contained therein is true and correct to the best of my knowledge and belief.

Richard C. Kay
Assistant United States Attorney

■■12·3225 BPG  thru  ■■12·3232 BPG  RCK

## AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANTS

### I.   Purpose of the Affidavit

This Affidavit is submitted in support of an application for search warrants for the various locations described in Attachment A for the items specified on Attachment B, and for seizure warrants for the contents of the accounts described in Attachment C.

I submit that there is probable cause to believe that Chesapeake Wine and Spirits, Crown Liquors, Park Liquors, North East Liquors, Happy 40 Liquors, and others have been engaged in activities constituting wire fraud and money laundering from at least 2009 up to and including the present, and that evidence, fruits, and instrumentalities of the commission of those offenses will be found at the locations described in Attachment A. I submit that there is also probable cause to believe that the accounts identified in Attachment C contain the proceeds of wire fraud conducted in violation of 18 U.S.C. section 1343, and also are involved in money laundering transactions conducted in violation of 18 U.S.C. section 1957, and, therefore, are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A) and (C).

### II. Affiant

Your Affiant, M. Lisa Ward, has been a Special Agent with Homeland Security Investigations (HSI), known previously as U.S. Customs Service, for twenty-one years. During that time, I prepared and executed numerous federal search and seizure warrants, worked

1

12-3225 BPG 12-3232 BPG

on Title III court-authorized intercepts, seized evidence of both state and federal violations, interviewed numerous suspects, witnesses, and informants, and evaluated extensive financial records as part of these investigations.

## III. Applicable Statutes

### Title 18 U.S.C. § 1343 (Wire Fraud)

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall [have committed an offense].

### Title 18 U.S.C. § 1957 (Money Laundering)

> (a) Whoever, [using transactions in the United States] …, knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall [have committed an offense.] [Wire fraud is a specified unlawful activity as defined in 18 U.S.C. sections 1956(c)(7) and 1961(1)(A).]

### Title 18 U.S.C. section 981 (Asset Forfeiture)

> (a)(1) The following property is subject to forfeiture to the United States:
>
> (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section … 1957 … of this title, or any property traceable to such property.
>
> * * *
>
> (C) Any property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title)[which includes wire fraud in violation of 18 U.S.C. section 1343], or a conspiracy to commit such offense.

## IV. Probable Cause

Your Affiant has participated in the investigation of the above-described offenses, and this affidavit is based upon my participation in this investigation, as well as reports made to me

12-3225BPG thru 12-3232BPG

by other agents and officers of HSI, Alcohol and Tobacco Tax and Trade Bureau (TTB), Bureau of Alcohol, Tobacco and Firearms (ATF), Internal Revenue Service (IRS), New York State Tax Criminal Investigations Division (NYSTCID), other law enforcement authorities, and from sources as indicated herein. This is a summary that is not meant to include each and every fact known to me.

Beginning in July 2011, SAC/Baltimore HIDTA Financial Group received information indicating that REPUBLIC NATIONAL DISTRIBUTING COMPANY (herein referred to as "REPUBLIC"), RELIABLE CHURCHILL, SUNBELT HOLDING Company, and SUNBELT BEVERAGE LLC (herein referred to as "RELIABLE"), and their employees and agents have been engaged in selling liquor, knowing that it was being transferred for resale in New York, without paying New York State liquor taxes. The information indicated that various individuals in New York were contacting liquor stores in Cecil County and ordering cases of liquor by telephone or by faxes sent to Maryland. The New Yorkers then would drive vans or trucks from New York to Cecil County, pay cash, load the cases of liquor into the vans or trucks, and drive back to New York where the liquor is sold without paying the New York taxes. As is demonstrated herein, people working at **Chesapeake Wine and Spirits**, **Crown Liquors**, **Park Liquors**, **North East Liquors**, **and Happy 40 Liquors** participated in this activity.

**Northside Liquors**

Beginning in 2009, investigators with TTB and ATF initiated an investigation of Northside Liquors (herein referred to as

12-3225 BPG thru 12-3232 BPG

"Northside") located at 701 North Bridge Street in Elkton, Maryland. Surveillance agents saw vans and trucks bearing New York license plates arriving almost daily at Northside, where the driver would go inside and then cases of liquor were loaded into the vans or trucks, literally through the back door of Northside. Agents then followed a number of these same vans and trucks as they headed up I-95 towards New York. Police stopped at least one of these vans and confirmed that the van was loaded with cases of liquor. New York authorities followed a number of these vans and trucks and confirmed that liquor retailers in and around New York City were selling the liquor. New York authorities confirmed that such sales are done to avoid paying the substantial state and city liquor taxes.

I know from my training and experience that criminals often profit by purchasing distilled spirits at lower tax rates in one state and then transporting the distilled spirits for sale in a state with a higher tax rate. I know that the state tax rate in Maryland for distilled spirits is $1.50 per gallon, and that the rate in the state of New York is $6.44 per gallon with an additional tax rate of $1.00 per gallon for the City of New York. Thus, the purchase of liquor in Maryland for sale in New York caused the defrauding of New York of the tax amounts that were due and owing for products sold in New York. Because the orders for liquor were placed by telephone and fax from New York to Maryland, the fraud, as outlined herein, was committed by wire in violation of 18 U.S.C. section 1343.

12-3225 BPG thru 12-3232 BPG

The Distributors

In Maryland, Northside placed orders with Baltimore area liquor distributors REPUBLIC and RELIABLE. Each distributor handles a discrete set of brands. So, a large order from New York of mixed brands in most cases would be split up between the two distributors.

During 2010, surveillance agents confirmed that deliveries were made by REPUBLIC and RELIABLE to Northside, and then vehicles registered in New York and New Jersey traveled to Maryland to pick up their orders. ATF and TTB agents made undercover orders to Northside by fax from New York, paid cash in amounts over $10,000 each time, and took delivery of cases of liquor that had been delivered by REPUBLIC and RELIABLE. Out-of-state customers paid Northside in cash that included (1) payment for the cost of the liquor, (2) plus 9% Maryland sales tax, and (3) plus a 2% to 5% commission that was retained by Northside. Bank records indicate that cash collected by Northside was deposited into their bank accounts before payment was made by check to REPUBLIC and RELIABLE for the liquor that had been delivered. The amount of liquor moved in a single order was routinely worth well over $10,000.

A Search Warrant Was Executed at Northside

In January 2011, ATF and TTB agents executed a search warrant at Northside and seized more than 500 cases of liquor and numerous documents, including copies of faxes that had been received from New York that contained orders of cases of liquor. Each fax specifies the brands, number of cases, and the costs. After the

12-3225BPG thru 12-3232BPG

search, both REPUBLIC and RELIABLE stopped shipping liquor to Northside, and they filed a legal action against Northside to attempt to collect for previously delivered liquor, some of which was seized during the search but most of which had been delivered to smugglers from New York. According to records, Northside owed REPUBLIC and RELIABLE approximately $100,000 and $800,000 respectively.

**Sources Described the Scheme**

In July 2011, HSI agents interviewed two Confidential Sources (hereinafter "CI-1 and 2") who had been employed at Northside at least during the 2009 to 2011 period. Based on personal observations, CI-1 and 2 were familiar with the business of the illegal liquor sales between Maryland and New York. According to CI-1 and 2, orders from New York came in by fax; each fax was then placed on a clipboard on the wall in the office, which is behind the front, retail part of the store. The value of these orders was routinely over $10,000. Sales representatives from both REPUBLIC and RELIABLE routinely came into Northside two or three times every week and they would first pick up from the cashier a short list of items needed to restock the front, retail part of the store. Then the sales rep routinely would go to the office in back, take the clipboard off the wall, and go through the faxes to add up the orders for out-of-state.

The sales rep then transmitted the order totals to the main office, and then, within days, a large truck from REPUBLIC or RELIABLE would arrive and deliver the order, which would be held in

the back, warehouse part of Northside. Then, the vans from New York would arrive, the driver would pay cash, and the cases of liquor would be loaded into the van. The cash would then be deposited into the bank and the funds would be transferred to REPUBLIC's and RELIABLE's bank accounts. These deposits and transfers are confirmed by bank records.

Northside had no routine, standing order with either REPUBLIC or RELIABLE. Instead, Northside only ordered and received liquor that was to be picked up by New York smugglers within days.

**Surveillance Confirms the Sources' Information**

CI-1 and 2 said that they observed that, during the period before the search and after, several other liquor stores in Cecil County continued to conduct similar, illegal sales to New York customers. Surveillance agents confirmed this information during the month of December 2011, as they saw a number of vans and trucks with New York license plates arrive and leave several other liquor stores in Cecil County, including one known as Chesapeake Wine and Spirits ("Chesapeake").

**The Liquor Orders Were Extraordinarily Large**

CI-1 and 2 said that the amounts and types of orders placed to the distributors each week were wholesale amounts that far exceeded the capacity of the small, retail operation at the front of the store. According to CI-1 and 2, it would be perfectly obvious to any one with knowledge of the retail liquor business that it literally would take years to sell in retail the quantities of

12 3225 BPG thru 12-3232 BPG

liquor that REPUBLIC or RELIABLE was delivering to Northside every couple of weeks.

Indeed, bank records show deposits from most REPUBLIC and RELIABLE customers around the state of Maryland to be under $3,000; exceptional are the Cecil County customers who routinely paid more than $15,000 and sometimes paid up to hundreds of thousands of dollars in each check. In fact, in one ten-day period at the end of November 2011, for example, Chesapeake paid REPUBLIC over $300,000 and paid RELIABLE over $400,000. Records seized from Northside show similar scales of purchases.

**Other Liquor Stores Are Similarly Involved**

As is mentioned above, CI-1 and 2 state that a number of other liquor stores in Cecil County also sell in wholesale amounts to New York buyers. Specifically, they identified **Chesapeake Wine and Spirits, Crown Liquors, Park Liquors, North East Liquors, and Happy 40 Liquors**. Each of these locations have been observed by case agents and are described more particularly on Attachment A.

**CHESAPEAKE WINE AND SPIRITS**

Bank records pertaining to **Chesapeake Wine and Spirits** indicate that it routinely pays amounts over $10,000 by check to REPUBLIC and RELIABLE. As an example, one such check, dated March 25, 2012, is in the amount of $70,000. Another check, dated March 30, 2012, is in the amount of $25,000. Records indicate that between May 1 and June 16, 2012, more than $800,000 in cash was deposited into NBRS Financial Bank account 1020204396 (hereinafter

LW 12-3225 BPG thru LW 12-3232 BPG

4396) in the name of SHREE SAI SHRADHA Inc., trading as CHESAPEAKE WINE AND SPIRITS. These deposits were routinely in amounts over $10,000 in cash. During this six-week period, six checks were made payable to REPUBLIC and seven checks were made payable to RELIABLE, totaling in excess of $650,000.

In June 2012, agents interviewed a confidential source (hereinafter CI-3) who was employed at RELIABLE. CI-3 stated that **CHESAPEAKE WINE & SPIRITS** was illegally selling large amounts of liquor to New York customers. CI-3 visited the store and stated that it was set up for wholesaling, not for retail sales. The owners told CI-3 that the bulk of their business is from sales to New York customers and not from retail sales.

In June 2012, government agents conducted surveillance at **Chesapeake Wine and Spirits**, 2728 Augustine Herman Highway, Chesapeake City, Maryland 21915, and saw cases of liquor being transferred from the store into a van with New York license plates. Agents followed the van and Delaware authorities stopped it in Delaware; the driver was arrested and charged with possession of untaxed liquor, unlicensed distribution, and possession of alcohol for sale without a license.

**NORTH EAST LIQUORS**

Bank records pertaining to **J&R Company LLC**, trading as **NORTH EAST LIQUORS**, indicate that, between April 2 and June 18, 2012, in excess of $300,000 in cash was deposited into account 0204000758 (hereinafter 0758) at Cecil Bank; these deposits were routinely in

amounts over $10,000 in cash. Between May and June 2012, three checks totaling more than $53,000 were made payable to REPUBLIC and checks totaling more than $71,000 were made payable to RELIABLE. These checks were routinely more than $10,000 each. Bank records show inter-account book transfers from account 0758 to NORTH EAST owner Jantinkumar PATEL's personal account 0103164919 (hereinafter 4919) also at Cecil Bank. Bank records pertaining to account 4919 also show cash deposits but no other sources of funding.

On March 1, 2012, PATEL purchased Cecil Bank check number 200499 in the amount of $70,500. The check was purchased using $22,446.90 from account 0758, $9,500 from 4919 and $38,553.10 from certificates of deposit owned by PATEL and purchased with cash. On March 14, 2012, PATEL deposited that same bank check, number 200499, into 4919 stating to his banker that it was not used for the purposes intended. He then used those funds to purchase a new six month CD #0215002417 in the amount of $70,500. Because the purchase included more than $10,000 traceable to the 0758 account, there is probable cause to believe that it is a transaction involving more than $10,000 in proceeds of the smuggling activity.

In June 2012, CI-3 provided information regarding a large liquor sale to New York by NORTH EAST LIQUORS. Later in June, surveillance agents observed cases of liquor valued at more than $10,000 being loaded from the rear door of NORTH EAST LIQUORS, 107 North East Plaza North East, Maryland 21901, into a van bearing New York license plates. The van was followed north on Interstate 95

12 3225 BPG thru 12 3232 BPG

into Delaware where surveillance was terminated. According to CI-3, **PATEL** had earlier indicated that he prefers weekend deliveries in order to avoid law enforcement detection.

**CROWN LIQUORS**

Bank records indicate that between May 1 and June 18, 2012, in excess of $220,000 in cash was deposited by **BIZZY B**, doing business as **CROWN LIQUORS**, into NBRS Financial Bank accounts 1020900561 (hereinafter 0561) and 1020900865 (hereinafter 0865). These cash deposits were routinely over $10,000. During this period, fourteen checks from account 0561 were made payable to REPUBLIC and fourteen checks were made payable to RELIABLE, totaling in excess of $400,000. These checks and others payable to the two distributors were routinely over $10,000. Bank records show book transfers between account 0865 and account 0561.

In June 2012, surveillance agents near **CROWN LIQUORS**, 1486 Perryville Road, Perryville, Maryland 21903, observed liquor being transferred from the rear of **CROWN LIQUORS** into a van with New York license plates. The van was stopped in Delaware and the driver was arrested and charged with possession of untaxed liquor, unlicensed distribution and possession of alcohol for sale without a license.

In June 2012, CI-3 met with **"Sunny and Alco,"** who were introduced as the owners of **CROWN LIQUORS**. Discussions involved the sale of liquor to New York by both **CROWN LIQUORS** and their related store, **PARK LIQUORS**.

L1 112 3225 BPG thru L1 112 3232 BPG

**PARK LIQUORS**

A company related to Crown is **RIDDHI SIDDHI "Sunny and Alco" LLC.**, doing business as **PARK LIQUORS**, which also deposited in excess of $130,000 in cash into account 0561 and into NBRS Financial Bank account number 1020302823 (hereinafter 2823). These deposits are routinely over $10,000. In June and the first week of July 2012, seven checks from account 2823 totaling in excess of $190,000 were made payable to RELIABLE. Bank records indicate that these checks were routinely over $10,000.

In June 2012, surveillance agents near **PARK LIQUORS**, 68 Heather Lane, Suite 40 Perryville, Maryland 21093, observed liquor being transferred from the rear of **PARK LIQUORS** into an SUV with New York license plates. That same vehicle was followed north on Interstate 95 onto the New Jersey turnpike heading towards New York when surveillance was terminated. One week later, the same SUV was observed at **PARK LIQUORS** again loading cases of liquor. The SUV was stopped in New York City and the driver was arrested and charged with possession of untaxed liquor, unlicensed distribution, and possession of alcohol for sale without a license. CI-3 observed that PARK LIQUORS is not set up for traditional retail sales and CI-3 stated that the owners of PARK may be storing liquor in a vacant rental unit also within the Perryville Outlet Shopping Center.

12 3225 BPG thru 12-3232 BPG

**HAPPY 40 LIQUORS**

WSFS Bank records pertaining to account 0207922808 (hereinafter 2808), which is in the name of **TECH PRIDE AMERICA, INC**, doing business as **Happy 40 Liquors**, shows large cash deposits that are routinely over $10,000. During this period six checks totaling in excess of $180,000 were made payable to RELIABLE and four checks totaling in excess of $230,000 were made payable to REPUBLIC. In June 2012, CI-3 visited **HAPPY 40 LIQUORS**. Roger, the operator of the store, suggested that the liquor salesmen might split with him their commissions made from sales to New York. Based on information learned during this investigation, I know that it is against Maryland state regulations for salesmen to kickback commissions in this way.

In June 2012, surveillance units at **HAPPY 40 LIQUORS**, 600 E. Pulaski Highway, Elkton, Maryland 21921, observed liquor being delivered by RELIABLE. Shortly after that delivery, a vehicle with New York license plates was observed being loaded with liquor. Agents followed the vehicle to Interstate 95 north and stopped it in Delaware. The driver was arrested and charged with possession of untaxed liquor, unlicensed distribution, and possession of alcohol for sale without a license.

Surveillance agents report that there are only a few retail customers each day at **Chesapeake**, **Crown**, **Park**, **North East**, and **Happy 40 Liquors**, with small, hand-carried purchases, but bank

12 3225 BPG thru 12 3232 BPG

records indicate that the stores are buying hundreds of thousands of dollars' worth of liquor each month from REPUBLIC and RELIABLE, far in excess of the observed retail traffic. At the same time, agents also saw that numerous cases of liquor are going out the back door of these stores to trucks bearing New York license plates several times every week. According to CI-3, all of these liquor stores receive the orders from New York by telephone or by fax. Because it takes at least a day or two to get the bulk deliveries from the distributors, it is not practical for the smugglers to travel from New York and then wait for the orders to be prepared. Therefore, there is probable cause to believe that a significant portion of the funds deposited into **Chesapeake, Crown, Park, North East,** and **Happy 40 Liquors** are proceeds of the illegal sales to New York.

## Records Maintained at These Stores

As is mentioned above, the case agents executed a search warrant at Northside in January 2011 and seized records that reflected contacts with New York customers and the orders that they placed. Those records and the interviews with CI-1 and CI-2 confirm that it was common practice to keep records of those orders and contacts. The negotiations for price and quantity between New York and Cecil County also involved price lists. Agents also seized records that indicated two sets of liquor sales documentation, one for illegal sales to New York, and one for the much smaller legitimate retail business; some of these records were maintained

12 3225 BPG thru 12 3232 BPG

on computers in electronic format. According to CI-3, each of the locations mentioned above uses computers to maintain records.

**Commingled Funds**

Your affiant knows that courts have held that there is no requirement that a substantial portion of the commingled funds in an account be derived from the criminal activity, so long as there is some evidence that some of the commingled funds were from criminal activity. United States V. Ward, 197 F.3d 1076 (11th Cir. 1999). The Fourth Circuit has also stated that when funds are drawn from a commingled account, the government is entitled to a presumption that the transaction involves criminally derived funds. United States V. Wilkinson, 137 F.3d 214 (4th Cir. 1998).

Your affiant knows that in forfeiture cases, the probable cause standard is the same as that in search and seizure cases, requiring a court "'to make a practical, common-sense decision whether, given all the circumstances set forth ... there is a fair probability' that the properties to be forfeited are proceeds of illegal ... transactions." United States v. Thomas, 913 F.2d 1111, 1114 (4th Cir. 1990)(drug case).

**The Money Laundering Summarized**

As is indicated above, the sales of liquor to New York buyers by the Cecil County liquor stores is in violation of the wire fraud statute because it is done with the knowledge that it is not for retail sale in Maryland, but is supplying smugglers who are transporting it to New York and selling it there, which deprives New York of its tax revenue. The cash proceeds of the sale of

liquor to New York buyers is received by the liquor retailers in amounts over $10,000, and then these funds are deposited by the liquor stores into their bank accounts, which are specified on Attachment C, and then checks are drawn in amounts well over $10,000 and those checks are then deposited by REPUBLIC and RELIABLE in their daily business accounts.

This activity describes a cycle of proceeds from the New York smugglers to the Cecil County liquor stores and then to REPUBLIC and RELIABLE. Therefore, all of the specified accounts contain the proceeds of wire fraud and also are involved in money laundering in violation of section 1957 because people at each retail store knowingly moved wire fraud proceeds through the accounts specified on Attachment C in amounts greater than $10,000.

V. **Conclusion**

Based on the foregoing, I submit that there is probable cause to believe that **Chesapeake, Crown, Park, North East, Happy 40 Liquors**, and others have been engaged in activities constituting wire fraud and money laundering from at least 2009 up to and including the present, and that the items described on Attachment B constitute evidence, fruits, and instrumentalities of those offenses and will be found at the locations identified in Attachment A. I submit that there is also probable cause to believe that the accounts specified on Attachment C contain the proceeds of wire fraud conducted in violation of 18 U.S.C. section 1343, and also were involved in money laundering transactions conducted in violation of 18 U.S.C. section 1957, and, therefore,

12 3225 BPG thru 12 3232 BPG

are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A) and (C).

M. Lisa Ward
Special Agent
Homeland Security Investigations

Subscribed and sworn before me on July 12, 2012.

Beth P. Gesner
United States Magistrate Judge

12 3225 BPG thru 12 3232 BPG

**ATTACHMENT A**

**Chesapeake Wine and Spirits**
2726 Augustine Herman Highway
Chesapeake City, Maryland 21915

1 ½ story stand-alone building with yellow siding and white trim and the numbers "2726" in green above a double glass entry door

**North East Liquors**
107 North East Plaza
North East, Maryland 21901

1 story brick front store located in a strip mall with single glass entry door with the numbers "107" in black above and "LIQUORS" in red letters on overhang on front of store

**Crown Liquors**
1486 Perryville Road
Perryville, Maryland 21903

1 story brick front store located in a strip mall with double glass entry door, wood shingle roof, and "CROWN LIQUORS" in red letters on white sign above door

**Park Liquors**
Perryville Outlets
68 Heather Lane, #40
Perryville, Maryland 21903

1 story red front store located in the Perryville Outlets (strip mall) with single glass entry door with the numbers "40" above and "LIQUORS" in white letters on overhang

**Happy 40 Discount Liquors**
600 East Pulaski Highway
Elkton, Maryland 21921

2 story stand-alone building with beige and brick walls, single glass entry door, "HAPPY 40 DISCOUNT LIQUORS" in black letters/numbers on front of building

RCK

**UNITED STATES DISTRICT COURT**
DISTRICT OF MARYLAND

In the Matter of the Seizure of
**(Address or brief description of property to be seized)**

**The contents of four NBRS Financial Bank accounts.**

**SEIZURE WARRANT**
CASE NUMBER: **12 3727 BPG**

TO: M. Lisa Ward, Special Agent, United States Immigration and Customs Enforcement, and any Authorized Officer of the United States:

An Affidavit having been made before me by M. Lisa Ward, Special Agent, United States Immigration and Customs Enforcement, who has reason to believe that in Maryland, and elsewhere there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

**[SEE THE ACCOUNTS SPECIFIED ON ATTACHMENT C].**

**I am satisfied that the affidavit establishes probable cause to believe that the property so described is subject to seizure and forfeiture and that grounds exist for the issuance of this seizure warrant.**

YOU ARE HEREBY AUTHORIZED **to seize within fourteen (14) days, the property specified, serving this warrant and making the seizure in the daytime - 6:00 AM to 10:00 PM - leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to any U.S. Magistrate Judge, as required by law. Service of this seizure warrant may be made by facsimile, provided that a hard copy is thereafter served by regular mail, overnight mail, or personal delivery.**

Issued July 12, 2012, at Baltimore, Maryland, by
**Date Issued**

Honorable Beth P. Gesner
United States Magistrate Judge

12 3227 BPG

ATTACHMENT C (NBRS)

A. The contents of NBRS Financial Bank Account **1020204396** in the name **Shree Sai Shradha Inc.** trading as **Chesapeake Wine and Spirits,** located in Rising Sun, Maryland.

B. The contents of NBRS Financial Bank Account **1020900561** in the name **Bizzy B** General Account DBA as **Crown Liquors**, located in Rising Sun, Maryland.

C. The contents of NBRS Financial Bank Account **1020302823** in the name of **Riddhi Siddhi** DBA **Park Liquors,** located in Rising Sun, Maryland.

D. The contents of NBRS Financial Bank Account **1020900865** in the name of **BIZZY B Inc,** Merchant Account located in Rising Sun, Maryland.

**UNITED STATES DISTRICT COURT**
DISTRICT OF MARYLAND

In the Matter of the Seizure of
**(address or brief description of property to be seized)**

**The contents of four NBRS Financial Bank accounts.**

**APPLICATION AND AFFIDAVIT FOR SEIZURE WARRANT**
CASE NUMBER: 12 3227 BPG

M. Lisa Ward, **Special Agent, United States Immigration and Customs Enforcement, being duly sworn deposes and says:**

**I have reason to believe that there is now certain property in Maryland, and elsewhere, which is the subject of forfeiture to the United States, namely (describe property to be seized):**

[SEE THE ACCOUNTS SPECIFIED ON ATTACHMENT C],

**which is (state one or more bases for seizure under the U.S Code)**

forfeitable pursuant to 18 U.S.C. section 981(a)(1)(C) because the accounts contain the proceeds of wire fraud conducted in violation of 18 U.S.C. section 1343, and also are involved in money laundering transactions made in violation of 18 U.S.C. section 1957.

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached Affidavit.**

M. Lisa Ward
Special Agent
U.S. Immigration and Customs Enforcement

**Sworn to before me, and subscribed in my presence on (Date)** July 12, 2012 **at Baltimore, Maryland.**

Honorable Beth P.Gesner
United States Magistrate Judge

M 12 3227 BPG

**ATTACHMENT C (NBRS)**

A. The contents of NBRS Financial Bank Account **1020204396** in the name **Shree Sai Shradha Inc.** trading as **Chesapeake Wine and Spirits,** located in Rising Sun, Maryland.

B. The contents of NBRS Financial Bank Account **1020900561** in the name **Bizzy B** General Account DBA as **Crown Liquors,** located in Rising Sun, Maryland.

C. The contents of NBRS Financial Bank Account **1020302823** in the name of **Riddhi Siddhi** DBA **Park Liquors,** located in Rising Sun, Maryland.

D. The contents of NBRS Financial Bank Account **1020900865** in the name of **BIZZY B Inc,** Merchant Account located in Rising Sun, Maryland.

**MEMORANDUM**

DATE: June 24, 2014

TO: Deborah Trotter
Internal Revenue Service

FROM: Matthew Miller
FSA Paralegal Specialist
U.S. Attorney's Office - District of Maryland

RE: **U.S. v. $10,635.23 in U.S. Currency**

**Civil Action No. ______________________**
**CATS ID 12-IRS-001844, 12-IRS-001845, 12-IRS-001846**

---

The United States has filed a forfeiture action against **$10,635.23 in U.S. Currency.** A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at www.forfeiture.gov pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.

Attachment

# Department of Homeland Security

*Federal Law Enforcement Agencies*

## PROCESS RECEIPT AND RETURN

| | |
|---|---|
| PLAINTIFF<br>**UNITED STATES OF AMERICA** | COURT CASE NUMBER |
| DEFENDANT<br>**$10,635.23 U.S. Currency** | TYPE OF PROCESS<br>Verified Complaint in Rem |

| | |
|---|---|
| **SERVE AT** | Name Of Individual, Company, Corporation, Etc. to Serve or Description of Property to Seize<br>12-IRS-001844, 1845, 1846 |
| | Address (Street or RFD / Apt. # / City, State, and Zip Code) |

| | | |
|---|---|---|
| Send NOTICE OF SERVICE copy to Requester:<br><br>Matthew Miller, FSA Paralegal Specialist<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number Of Process To Be Served In This Case. | |
| | Number Of Parties To Be Served In This Case. | |
| | Check Box If Service Is On USA | |

SPECIAL INSTRUCTIONS or OTHER INFORMATION TO ASSIST IN EXPEDITING SERVICE (includes Business and Alternate Addresses, Phone Numbers, and Estimated Availability times.)

Arrest property. Fill in the date of arrest in this process receipt and return our copy.

| | | |
|---|---|---|
| Signature of Attorney or other Originator requesting service on behalf of [ X ]Plaintiff [ ]Defendant<br>Richard C. J | Telephone No.<br>(410) 209-4800 | Date<br>Jun 24, 2014 |
| SIGNATURE OF PERSON ACCEPTING PROCESS: | | Date |

### SPACE BELOW FOR USE OF TREASURY LAW ENFORCEMENT AGENCY

| I acknowledge receipt for the Total # of Process Indicated. | District of Origin No. | District to Serve No. | SIGNATURE OF AUTHORIZED TREASURY AGENCY OFFICER: | Date |
|---|---|---|---|---|
| | | | | |

I hereby Certify and Return That I [ ] PERSONALLY SERVED, [ ] HAVE LEGAL EVIDENCE OF SERVICE, [ ] HAVE EXECUTED AS SHOWN IN "REMARKS", the Process Described on the Individual, Company, Corporation, Etc., At The Address Shown Above or at the Address Inserted Below.

[ ] I HEREBY CERTIFY AND RETURN THAT I AM UNABLE TO LOCATE THE INDIVIDUAL, COMPANY, CORPORATION, ETC. NAMED ABOVE.

| | | |
|---|---|---|
| NAME & TITLE of Individual Served If not shown above: | [ ] A Person of suitable age and discretion then residing in the defendant's usual place of abode. | |
| ADDRESS: (Complete only if different than shown above.) | Date of Service | Time of Service [ ] AM [ ] PM |
| | Signature, Title and Treasury Agency | |

**REMARKS:**

TD F 90-22.48 (6/96)

*Make (5) copies after form is signed. SEND ORIGINAL + 4 COPIES to TREASURY AGENCY. Retain Copy #5 for your file.*